In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Ricky Dean's, Inc., d/b/a The Sandbar; Rita "Peach" Madl.** | Civil Action No. |
| Plaintiffs, | Verified Complaint |
| v. | |
| **Thomas Marcellino, M.D.,** in his official capacity as the Lawrence-Douglas County, Kansas, Local Health Officer; **John Doe 1-20; Doe Entities 1-20.** | |
| Defendants. | |

**Verified Complaint**

Plaintiffs Ricky Dean's, Inc., d/b/a The Sandbar, and Rita "Peach" Madl file this Verified Complaint against Defendant Thomas Marcellino, M.D., in his official capacity as the Lawrence-Douglas County, Kansas, Local Health Officer, and against John Doe and John Doe entities.

**Introduction**

This is a civil rights lawsuit seeking relief from a county-wide emergency order issued on October 1, 2020, by an unelected, politically unaccountable local health officer, Thomas Marcellino, M.D.

The Order requires restaurants and bars with liquor licenses to stop serving alcohol at 11:00 p.m. and to close at 12:00 a.m., regardless of the bar's COVID-19 mitigation procedures and protocols. The Order prohibits a bar from utilizing *outdoor* seating areas after midnight but permits *indoor* restaurants without a liquor license to remain open after midnight. Curbside sales of food are permitted after 11:00 p.m., but curbside sales of alcohol are not.

Peach Madl, the longtime owner of the iconic The Sandbar is not asking this Court to declare it safe enough to operate. *That* question should be resolved at an immediate post-

deprivation hearing before a neutral party. But a meaningful hearing process does not exist within the current Order, so Ms. Madl and The Sandbar have no other option than to file this lawsuit for non-monetary, prospective relief.

First, Dr. Marcellino does not have the statutory authority to unilaterally create and impose a restaurant and bar curfew regime. By doing so, he has acted *ultra vires*. But even if he did have the authority to create such a regime, the Order does not purport to explain the justification for imposing such a regime. Among other things, the Order does not explain why a bar with outdoor seating must stop commercial transactions after 11:00 p.m. but an indoor restaurant is permitted to remain open; and does not explain why a bar is prohibited from offering curbside alcohol sales after 11:00 p.m. but curbside food sales by a restaurant are permitted. There is no constitutionally sufficient rationale for imposing the restaurant and bar curfew regime.

*If* on the other hand, Dr. Marcellino has the statutory authority to unilaterally create a restaurant and bar curfew regime, which is for all intents and purposes a de facto licensing regime, and *if* the Order is not unconstitutional, the health statutes *enabling* the Order are unconstitutional.

The Local Health Officer's Order violates three federal constitutional principles: procedural due process, substantive due process, and equal protection. The statutes enabling the Order, KSA § 65-119 and, to the extent relied upon, KSA § 65-202, violate federal due process, and the state separation of powers and non-delegation doctrines.

Peach and The Sandbar do not consent to the restaurant and bar curfew regime, object to the restaurant and bar curfew regime, and if the Order had a hearing process, would utilize it.

### Parties

1. Ricky Dean's, Inc., is a Kansas for profit corporation formed in 1989. Ricky Dean's Inc. does business as The Sandbar, which is located at 17 East 8th Street in Lawrence, Kansas. Ricky Dean's, Inc., d/b/a The Sandbar holds a Food Establishment License

pursuant to KSA § 65-619, et. seq. and a Drinking Establishment License pursuant to KSA § 41-2642.

2.   Rita "Peach" Madl is, according to the latest annual report, the president or equivalent of Ricky Dean's, Inc., which does business as The Sandbar.  Ms. Madl is a Kansas resident. Ms. Madl files this suit in her capacity as the president or equivalent of Ricky Dean's, Inc. and in her individual capacity.

3.   Defendant Thomas Marcellino, M.D., is the Lawrence-Douglas County Local Health Officer (Local Health Officer) and is sued in his official capacity for non-monetary, prospective relief. Dr. Marcellino issued the Order in this case (Exhibit 1), and according to the Order's terms, did so purportedly under his authority "provided in K.S.A. 65-119 and K.S.A. 65-129b and other applicable laws or regulations." (Exhibit 1, page 1).

   a.   Dr. Marcellino was hired by the Director of the Lawrence-Douglas County Health Board (Health Board).  In effect, the Health Board acts as a governing body of sorts for the Lawrence-Douglas County Health Department (Health Department).

   b.   Health Board members are appointed by the Douglas County Commission, the Lawrence City Commission, and by joint action of the two governing bodies. One *ex officio* member is selected by the University of Kansas Chancellor.

4.   At all times, Defendant Marcellino was acting under color of state law which caused the deprivation of Plaintiffs' rights, protected by the United States Constitution.

5.   Plaintiffs reserve the right to amend the complaint to assert claims against Doe persons and entities. Plaintiffs anticipate conducting discovery in this matter which could reveal a basis for adding additional defendants based on their activities in connection with the issues in this case.

6.   Defendant Marcellino is sued in his official capacity for non-monetary, prospective relief.

7.    The Attorney General will be served with a copy of the proceedings pursuant to KSA § 75-764.

## Jurisdiction and Venue

8.    Plaintiffs seek to vindicate their rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, the Declaratory Judgments Act, 28 U.S.C. §§2201-02, and under 42 USC § 1988 to award attorney's fees; and seek to vindicate their rights under the Kansas Constitution.

9.    Plaintiffs seek or will seek temporary and/or preliminary and permanent prospective injunctive relief, and a declaratory judgment, all arising from the Order and/or the Order's enabling statutes.

10.   This Court has jurisdiction under 28 USC §§ 1331, 1343, and 1367 (supplemental jurisdiction) and 42 USC § 1983.

11.   Venue is proper because the acts occurred in Douglas County, Kansas.

## Facts

12.   "COVID-19 is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person."  Centers for Disease Control COVID-19 & IPC Overview (accessed Oct. 9, 2020).[1] COVID-19 was "identified in" … "December 2019." *Id.*

13.   "COVID-19 is primarily transmitted from person-to-person through respiratory droplets." Centers for Disease Control COVID-19 & IPC Overview (accessed Oct. 9, 2020).

14.   "Available data indicate that SARS-CoV-2 has spread more like most other common respiratory viruses, primarily through respiratory droplet transmission within a short range (e.g., less than six feet). There is no evidence of efficient spread (i.e., routine, rapid spread) to people far away or who enter a space hours after an infectious person

---

[1] Accessible at https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background

was there." Center for Disease Control, SARS-CoV-2 & Potential Airborne Transmission (Accessed Oct. 9, 2020).[2]

15.     "A physical distance of at least 1 meter (3 ft) between persons is suggested by the World Health Organization (WHO) to avoid infection, although some WHO member states have recommended maintaining greater distances whenever possible[.]" Centers for Disease Control COVID-19 & IPC Overview (accessed Oct. 9, 2020).

16.     "Despite the important concerns about case fatality rates, most COVID-19 illnesses are – and we expect will continue to be – mild, and most patients will recover spontaneously with some supportive care, especially children and young adults. Data from several countries suggest that 14%-19% are hospitalized and 3%-5% will need intense care unit admission." Centers for Disease Control COVID-19 & IPC Overview (accessed Oct. 9, 2020).

17.     "There are a number of ways to prevent the spread of COVID-19 infection. These include: Avoid touching your eyes, nose and mouth; Avoid close contact with people who are sick; Remember that some people without symptoms can still spread the virus; Stay at home when you are sick; Cover your cough or sneeze with a tissue, then dispose of it properly; Use a face covering when physical distancing is difficult or when going into closed spaces; Physical distancing should be at least 1 meter (3 ft); Clean and disinfect frequently touched objects and surfaces; Perform hand hygiene with soap and water or use alcohol-based hand rub; Hand Rub should contain at least 60% alcohol; Hand washing should be done for at least 40-60 seconds based on WHO's recommendations[.]" Centers for Disease Control COVID-19 & IPC Overview (accessed Oct. 9, 2020) (cleaned up)

18.     Local Health Officer Dr. Marcellino is charged with "exercise[ing] and maintain[ing] a supervision" over infections or contagious disease cases and charged with "seeing that all such cases are properly cared for[.]" KSA § 65-119(a).

---

[2] Accessible at https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html

19. Dr. Marcellino has the statutory power to "prohibit public gatherings" (KSA § 65-119), "use all known measures" (KSA § 65-202), and "isolate" (KSA § 65-129b) or "quarantine" (KSA § 65-129b) individuals. An order "prohibit[ing] public gatherings" is statutorily enforceable (KSA § 65-127) ("Any person found guilty of violating any of the provisions of K.S.A. 65-118, 65-119, 65-122, 65-123 and 65-126, and any amendments thereto, or failing to comply with any requirements thereof shall be fined, upon conviction, not less than twenty-five dollars ($25) nor more than one hundred dollars ($100) for each offense."), but an "all known measures" order is not enforceable. See *id*. Neither phrase, "prohibit public gatherings" or "use all known measures" is statutorily defined.

20. Dr. Marcellino, in his official capacity as the Local Health Officer, has issued a variety and series of emergency orders throughout the COVID-19 pandemic. They include:

   a. March 18, 2020 (Exhibit 2) ("All restaurants, dining facilities, bars, taverns, clubs and movie theatres in Douglas County, Kansas are hereby ordered closed to the public effective 12:01 a.m. on March 19, 2020 until 12:01 a.m. on April 1, 2020[.]").

   b. May 26, 2020 (Exhibit 3) ("The following, unless they are repurposed for use in an essential function under the KEFF … shall be closed to the public: [b]ars and night clubs, excluding already operating curbside and carryout services.").

   c. June 4, 2020 (Exhibit 4) ("All businesses can open if they comply with the following: [m]aintain at least 6 feet of distance between customers or groups of customers[.]").

   d. July 2, 2020 (Exhibit 5) ("The following, unless they are repurposed for use in an essential function … shall be closed to the public: [b]ars and night clubs, excluding already operating curbside and carryout services.").

   e. September 4, 2020 (Exhibit 6):

> c.   In addition to subsection (a) and (b), restaurants and bars with liquor licenses are
> required to cease serving alcohol at 9:00 pm and shall close their premises,
> including all outside seating areas or patios, to customers no later than 10:00 pm.
> Restaurants and bars serving alcohol may conduct carry-out, curbside and off-
> premises delivery of food items after 10:00 pm. There shall be no carry-out,
> curbside or off-premises delivery of alcoholic beverages after 9:00 pm. Restaurants
> that do not serve alcohol are not required to close at 10:00 pm.

21.   None of Dr. Marcellino's orders have included a pre- or post-deprivation hearing process of any kind.

22.   On October 1, 2020, Dr. Marcellino, in his official capacity as the Local Health Officer, issued the Emergency Public Order ("Order") specifically at issue in this case. Exhibit 1.

23.   The Order's restaurant and bar curfew regime[3] may be found, in part, at Exhibit 1, pages 2-3:

> c.   In addition to subsection (a) and (b), restaurants and bars with liquor licenses are
> required to cease serving alcohol at 11:00 pm and shall close their premises,
> including all outside seating areas or patios, to customers no later than 12:00
> am/midnight. Restaurants and bars serving alcohol may conduct carry-out, curbside
> and off-premises delivery of food items after 11:00 pm. There shall be no carry-out,
> curbside or off-premises delivery of alcoholic beverages after 11:00 pm.
> Restaurants that do not serve alcohol are not required to close at 12:00
> am/midnight.

24.   The Order remains in effect "until rescinded or until modified." (Exhibit 1.) According to the Order itself, Dr. Marcellino issued the Order pursuant to "K.S.A. 65-119 and KSA § 65-129b and other applicable laws or regulations." (Exhibit 1, page 1).

25.   The Order does not explain the justification for imposing a restaurant and bar curfew; does not explain why a bar with *outdoor* seating must stop commercial transactions at 11:00 p.m., but an *indoor* restaurant is permitted to remain open; and does not explain why a bar is prohibited from offering curbside or off-premises delivery of alcoholic beverages at certain times. At times, the Order offers highly generalized statements in

---

[3] The restaurant and bar curfew regime is shorthand for the "business restrictions" in paragraphs 4.c., 4.c.3., 4.c.4., 4.c.5., and to the extent appliable to Plaintiffs, 4.d, 4.d.1, 4.d.2, 4.d.3, 4.d.5, 4.d.6 and 4.d.7.

favor of generalized COVID-19 mitigation strategies: "the Local Health Officer believes continuation of some community mitigation strategies is necessary due to the continued influx of new cases in order to allow the resources for contact tracing and exposure notification to be able to address the community spread of the disease and to ensure the capacity of other local resources is adequate to meet the increased need." Exhibit 1, page 1. The Order's justification for the 11:00 p.m./midnight curfew appears to be the same as the previous Order's 9:00 p.m./10:00 p.m. curfew. Compare Exhibit 1 with Exhibit 6.

26.    The Order does not demonstrate any causal relationship between alcohol sales and the transmission of COVID-19.

27.    There is no discernable justification, or such justification is too attenuated, for imposing a curfew on restaurants and bars with liquor licenses.

28.    There is no discernable justification, or such justification is too attenuated, for why 11:00 p.m. is the hour at which restaurants and bars with liquor licenses must stop commercial transactions.

29.    There is no constitutionally sufficient rationale for imposing the restaurant and bar curfew regime.

30.    At all times, Defendant Marcellino was acting under color of state law.

31.    Enforcement of Defendant Marcellino's health orders exists in the following ways: by threatening to impose fines for any person violating local health orders ((Exhibit 7) ("An intentional violation of a public health order carries a civil penalty of up to $2,500, and the Douglas County District Attorney's Office makes decisions on pursuing prosecution of such complaints.")), by threatening to close non-compliant restaurants and bars ((Exhibit 7) ("'The intent of the order is clear. All establishments operating must be following proper KDHE protocols and the public health order,' Marcellino said. 'Any restaurant, bar or entertainment venue found to be violating these protocols, including allowing customers to be seated at tables not six feet part, or allowing customers to stand or gather in a location other than a table – including at a bar in the restaurant is subject to be closed.'")), by issuing public health enforcement flyer

(Exhibit 8) and by conducting unannounced inspections. (Exhibit 9). Although these exhibits reference the previous health order, there is no indication enforcement will not exist for the current Order.

32.   The Order does not contain a pre- or post-deprivation hearing process. Regardless of the COVID-19 mitigation procedures in place, a business impacted by this Order has no choice but to comply, or risk fines, prosecution, or immediate and potentially permanent closure.

33.   The Order treats restaurants and bars with liquor licenses differently from restaurants without liquor licenses, for no constitutionally sufficient reason, and treats all bars and restaurants with liquor licenses similarly, for no constitutionally sufficient reason.

34.   The Order's restaurant and bar curfew regime is an ongoing violation of federal law, is a direct and proximate result of the Order issued in this case by Defendant Marcellino, and the statutes that enable the Order.

35.   The Order's enabling statutes likewise constitute an ongoing violation of federal law and an ongoing violation of the Kansas Constitution.

**The Sandbar and Rita "Peach" Madl**

36.   Ricky Dean's, Inc., is a Kansas for profit corporation formed in 1989. Ricky Dean's Inc. does business as The Sandbar. Ricky Dean's, Inc., d/b/a The Sandbar, holds a Food Establishment License pursuant to KSA § 65-619, et. seq., and a Drinking Establishment License pursuant to KSA § 41-2642.

37.   The Drinking Establishment license allows Ricky Dean's Inc., d/b/a The Sandbar (The Sandbar) to, among other things, "sell and serve alcoholic liquor for consumption on licensed premises; serve free samples of alcoholic liquor; redeem drink coupons in arrangement with a hotel; and other activities so authorized in K.S.A. 41-2642."

38.   The Food Establishment License grants The Sandbar, among other things, the "[a]uthority to operate as a Food Establishment" under the Kansas Food, Drug and Cosmetic Act.

39.     Rita "Peach" Madl is, according to the annual report, the president or equivalent of Ricky Dean's, Inc., which does business as The Sandbar.

40.     The Sandbar promotes itself as "inspired by the free-spirited lifestyle of Key West and the music of Jimmy Buffet, the Sandbar is a tiny oasis for people from all walks of life. From University of Kansas students and returning alumni to local business people to tourists, the Sandbar's tiki-bar atmosphere has something for everyone."[4]

41.     Despite its "free-spirited" nature, The Sandbar has put in place serious COVID-19 mitigation procedures and protocols:







---

[4] Accessible at: http://www.thesandbar.com/about/

42.     The Health Board or Health Department sent what appears to be a form letter dated September 15, 2020 indicating that "[b]usinesses in violation of the health order may be closed, and individuals may be subject to a Class A misdemeanor, which could result in a fine of up to $2,500 and one year in jail." Exhibit 10.

43.     The Sandbar and Ms. Madl have been and continue to be injured by the restaurant and bar curfew regime. Among other things, The Sandbar must cease certain commercial activity at 11:00 p.m.; physically close its business to customers at 12:00 a.m.; and is prohibited from offering curbside or "to-go" sales after 11:00 p.m. This restaurant and bar curfew regime contravenes state law in many ways, but as an example, The Sandbar would not otherwise be prohibited from serving alcoholic beverages from 6:00 a.m. to 2:00 a.m., (*See* KSA § 41-2614) or offer curbside sales during normal hours. *See ex.* Exhibit 11 (Kansas Department of Revenue Memorandum, "RE: COVID-19 Concerns Regarding Sales on the Licensed Premises" (March 18, 2020). There is no constitutionally sufficient rationale for imposing the restaurant and bar curfew regime.

44.     The restaurant and bar curfew regime has caused significant economic injury to The Sandbar and Ms. Madl and will continue to cause significant economic injury.

45.     The same day the Order is enjoined and/or declared unconstitutional, The Sandbar will either fully open for business (while still implementing COVID-19 mitigation procedures and protocols) without anxiety, fear, or frustration, or immediately request a hearing before the appropriate tribunal.[5] Similarly, Ms. Madl will either operate The Sandbar fully (while still implementing COVID-19 mitigation procedures and protocols), without anxiety, fear, or frustration, or immediately request a hearing before the appropriate tribunal.

46.     The Order is an ongoing violation of federal law.

---

[5] Of course, Plaintiffs reserve the right to object to the hearing process on the grounds it is constitutionally deficient, for example.

47.   But for Order, The Sandbar and/or Ms. Madl would not have suffered the extent of these harms or injuries in the past, and would not suffer the extent of these harms or injuries in the future.

48.   Because the Order does not contain a pre- or post-deprivation process, The Sandbar and Ms. Madl have no other option than to file this lawsuit.

49.   The Sandbar and Ms. Madl have been and continue to be injured by the Order because, among other things, they do not have any opportunity other than this suit to challenge the Local Health Officer's decision.

50.   The Sandbar and Ms. Madl have been and continue to be injured by the Order's enabling statutes. Among other things, The Sandbar must cease certain commercial activity at 11:00 p.m.; physically close its business to customers at 12:00 a.m.; and is prohibited from offering curbside or "to-go" sales after 11:00 p.m. The Sandbar would not otherwise be prohibited from serving alcoholic beverages from 6:00 a.m. to 2:00 a.m., (See KSA § 41-2614) or offer curbside sales during normal hours. *See ex.* Exhibit 11 (Kansas Department of Revenue Memorandum, "RE: COVID-19 Concerns Regarding Sales on the Licensed Premises" (March 18, 2020).

51.   The Order's enabling statutes have caused significant economic injury to The Sandbar and Ms. Madl and will continue to cause significant economic injury.

52.   The same day the Order's enabling statutes are enjoined and/or declared unconstitutional, The Sandbar will either fully open for business (while still implementing COVID-19 mitigation procedures and protocols) without anxiety, fear, or frustration, or immediately request a hearing before the appropriate tribunal.[6] Similarly, Ms. Madl will either operate The Sandbar fully (while still implementing COVID-19 mitigation procedures and protocols), without anxiety, fear, or frustration, or immediately request a hearing before the appropriate tribunal.

---

[6] Of course, Plaintiffs reserve the right to object to the hearing process on the grounds it is constitutionally deficient, for example.

53. But for Order's enabling statutes, The Sandbar and/or Ms. Madl would not have suffered the extent of these harms or injuries in the past, and would not suffer the extent of these harms or injuries in the future.

54. The Sandbar and Ms. Madl have been and continue to be injured by the Order's enabling statutes because, among other things, they are unconstitutionally vague, and they do not provide for an opportunity to challenge the Order.

55. The Order's enabling statutes are an ongoing violation of federal law and an ongoing violation of the Kansas Constitution.

56. But for the Order's enabling statutes and threatened enforcement, The Sandbar and/or Ms. Madl would not have suffered the extent of these harms or injuries in the past, and would not suffer the extent of these harms or injuries in the future.

## Declaratory Judgment and Injunctive Relief

57. Plaintiffs reallege and incorporate by reference all the preceding paragraphs

58. An actual controversy has arisen and now exists between Plaintiffs and Defendant Marcellino concerning Plaintiffs' rights under the United States and Kansas Constitutions. A judicial declaration is necessary and appropriate at this time.

59. Plaintiffs desire a judicial determination of their rights against Defendant Marcellino as it pertains to the restaurant and bar curfew regime and the regime's enabling statutes.

60. It is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring unconstitutional all relevant portions of Order and the Order's enabling statutes at issue in this case.

61. Pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 65, it is appropriate that this Court issue a temporary restraining order, and/or preliminary and permanent prospective injunctive relief prohibiting enforcement of the Order and/or the Order's enabling statutes.

## Constitutional Violations
### Claim One:  The Order Violates the Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution (42 USC § 1983)

62.    Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

63.    The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property without due process of law[.]"

64.    Procedural due process ensures the government will not deprive a party of life, liberty, or property, without engaging in fair procedures to reach such a decision.

65.    Procedural due process requires that an individual be given the opportunity to be heard in a meaningful time and a meaningful manner. *See Loudermill v. Cleveland Bd. of Educ.*, 470 U.S. 532 (1985); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (Due process requires an "opportunity which must be granted at a meaningful time and in a meaningful manner.").

66.    In this context, a health order impacting a business operation and/or earning a living, coupled with interests in a license(s), is or should be, enough to trigger procedural due process guarantees. *See ex.*: *Truax v. Raich*, 239 U.S. 33, 41 (1915) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure."), *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 572 (1972), (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (A liberty interest includes "the right of the individual to contract, to engage in any of the common occupations of life … and generally to enjoy those privileges long recognized … as essential to the ordinary pursuit of happiness by free men."), *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (The "right to enjoy employment opportunities in his chosen field—has been repeatedly upheld in the courts); *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984) ("The liberty interest that due process protects includes the individual′s freedom to earn a living."), *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) (Interest in health and success of business "self-evident."), *Wise v. Bravo*, 666 F.2d 1328, 1336 (10th Cir. 1981)

(Seymour, J. concurring) ("Like the right to marry and have children and the right to live where one wants and pursue a livelihood by any lawful means, this right constitutes a 'liberty' interest. As such it is protected by the due process clause of the Constitution."), *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1149–50 (10th Cir. 2001) (A license to "practice one's calling or profession is a protected property right" for due process purposes), *Tanasse v. City of St. George*, 172 F.3d 63 (10th Cir. 1999) (unpublished) (A business interest and a beer license is sufficient to invoke due process protection), *Microtronics, Inc. v. City of Iola*, KS, No. 03-1159-WEB, 2003 WL 22149671, at *6 (D. Kan. Sept. 9, 2003) ("Plaintiff's real estate and business operations were undoubtedly property interests [in the due process context.]"), *County of Butler v. Thomas W. Wolf*, 2:20-CV-00677, (ECF. Doc. 79) (E.D. Penn., Sep. 14, 2020).

67.     In some limited instances, the government might be able to dispense with a *pre-*deprivation hearing. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.") (cleaned up). Those instances must be "extraordinary" and "truly unusual." *Fuentes v. Shevin*, 407 U.S. 67, 91 (1972). In this instance, the Order does not provide a pre- or post-deprivation hearing process of any kind. The lack of a pre- and post-deprivation hearing violates procedural due process.

68.     There is no hearing process contained within the Order, but if there were such a process, Defendant Marcellino has the burden of establishing that Plaintiffs must remain subjected to the Order. *See ex.*: *Speiser v. Randall*, 357 U.S. 513 (1958), *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), *Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1210 (D.N.M.), modified on reconsideration, 326 F. Supp. 3d 1145 (D.N.M. 2018).

69.     The Order's restaurant and bar curfew regime constitutes a "deprivation" in the constitutional sense.

70. On its face and as applied, the Order violates the Fourteenth Amendment to the United States Constitution because it does not provide a pre- or post-deprivation hearing process, and if there were a hearing process, the burden must be on Defendant Marcellino.

71. Defendant Marcelino issued the Order causing Plaintiffs' injuries. As a consequence, Plaintiffs have been and continue to be injured, and are therefore entitled to, among other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

72. Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

73. Unless the Order is declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

**Claim Two:  The Order Violates the Right to Substantive Due Process under the Fourteenth Amendment to the United States Constitution (42 USC § 1983)**

74. Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

75. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property without due process of law[.]"

76. The Fourteenth Amendment "includes a substantive component that bars arbitrary, wrongful, government action regardless of the fairness of the procedures used to implement them." *County of Butler v. Thomas W. Wolf*, 2:20-CV-00677, (ECF. Doc. 79), 2020 WL 5510690, at *25 (E.D. Penn., Sep. 14, 2020) (cleaned up).

77. Substantive due process protects against certain exercises of governmental power.

78. In this context, Plaintiffs have or should have the requisite liberty or property interest to trigger substantive due process guarantees. *See ex. County of Butler v. Thomas W. Wolf*, 2:20-CV-00677, (ECF. Doc. 79), 2020 WL 5510690 (E.D. Penn., Sep. 14, 2020).

79. The Order violates substantive due process for all of the following reasons, when considered individually or collectively:

a. Defendant Marcellino acted *ultra vires* by creating and promulgating a restaurant and bar curfew regime;

b. Defendant Marcellino acted *ultra vires* by creating and promulgating a de facto restaurant and bar licensing regime;

c. Defendant Marcellino's Order does not set forth any process or means to challenge the Order;

d. Defendant Marcellino's Order is arbitrary, capricious, irrational, and abusive toward "restaurants and bars with liquor licenses" in general and Plaintiffs in particular because there is discernable justification, or such justification is too attenuated, that "restaurants and bars with liquor licenses" are unique vectors for the spread of COVID-19, in general, or as applied to Plaintiffs; because there is no discernable justification, or such justification is too attenuated, to treat Plaintiffs the same as, or similar to, other "restaurants and bars with liquor licenses" regardless of Plaintiffs' COVID-19 mitigation protocols; because there is no discernable justification, or such justification is too attenuated, that prohibiting "restaurants and bars with liquor licenses" and Plaintiffs from offering curbside sales of alcohol at certain times, is necessary or appropriate to stem COVID-19; because there is no discernable justification, or such justification is too attenuated, that ordering alcohol after a certain time increases the spread of COVID-19; because there is no discernable justification, or such justification is too attenuated, that it is necessary and appropriate for "restaurants and bars with liquor licenses" and Plaintiffs to close *outdoor* seating at a certain time; and because there is no discernable justification, or such justification is too attenuated, that it is necessary and appropriate to prohibit standing, but not sitting.

80. On its face and as applied, the Order violates the Fourteenth Amendment to the United States Constitution.

81. Defendant Marcelino issued the Order causing Plaintiffs' injuries. As a consequence, Plaintiffs have been and continue to be injured, and are therefore entitled to, among

other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

82.  Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

83.  Unless the Order is declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

**Claim Three:  The Order Violates the Right to Equal Protection under the Fourteenth Amendment to the United States Constitution (42 USC § 1983)**

84.  Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

85.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

86.  The Equal Protection clause ensures persons similarly situated should be treated alike. The Equal Protection clause also protects against differently situated persons from being treated the same.

87.  The restaurant and bar curfew regime treats all "restaurants and bars with liquor licenses" as the same; and treats "restaurants and bars with liquor licenses" differently from restaurants that do not serve alcohol, such that the Equal Protection Clause is violated. There is no constitutionally sufficient rationale for imposing the restaurant and bar curfew regime.

88.  Defendant Marcelino issued the Order causing Plaintiffs' injuries. As a consequence, Plaintiffs have been and continue to be injured, and are therefore entitled to, among other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

89.  Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

90.  Unless the Order is declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

**Claim Four:  The Enabling Statute(s) Violate the Right to Due Process under the Fourteenth Amendment to the United States Constitution (42 USC § 1983) (Void for Vagueness)**

91.   Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

92.   An enactment is void for vagueness if it "**is so standardless that it authorizes or encourages seriously discriminatory enforcement.**" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Welch v. United States*, 136 S. Ct. 1257 (2016).

93.   The health statutes at issue do not define or otherwise establish sufficient standards necessary to prohibit or discourage seriously discriminatory enforcement. Instead, the statutes authorize a local health officer to "prohibit public gatherings" and to the extent relied upon, take "all known measures." The lack of standards has caused seriously discriminatory enforcement in this case, i.e.: the creation, implementation and enforcement of the restaurant and bar curfew regime at issue in this case.

94.   As a consequence of the enabling statutes, Plaintiffs have been and continue to be injured, and are therefore entitled to, among other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

95.   Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights, other than to file this lawsuit for non-monetary, prospective relief.

96.   Unless the enabling statutes are declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

**Claim Five:  The Enabling Statute(s) Violate the Unlawful Delegation and Separation of Powers Doctrines Under the Kansas Constitution and/or Defendant Exceeded his Authority**

97.   Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

98.   The non-delegation doctrine prohibits the delegation of governmental power to unelected and politically unaccountable bodies. *Schneider v. Kansas Sec. Comm'r*, 54

Kan. App. 2d 122, 146 (2017). The non-delegation doctrine "flows from the separation of powers principles embodied in Art. 2, § 1 of the Kansas Constitution, which provides that the legislative power of this state shall be vested in a house of representatives and senate." *Schneider v. Kansas Sec. Comm'r*, 54 Kan. App. 2d 122, 146 (2017) (cleaned up).

99.    "Article 2 of the Kansas Constitution gives the legislature the **exclusive** power to pass, amend, and repeal statutes." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898 (2008) (emphasis added). *See also State ex rel. Stephan v. Finney*, 251 Kan. 559 (1992).

100.   Only the legislature can legislate. *State ex rel. Tomasic v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, 264 Kan. 293, 303 (1998) ("If the constitution does not authorize a delegation of such legislative power, then the delegation is improper as a violation of the separation of powers doctrine and art. 2, § 1, which vests legislative power with the legislature only.").

101.   "If the legislature has included specific standards in a delegation, then it has already enacted the law and it is simply delegating the administrative power to administer the law, based on the standards included in the delegation. On the other hand, if the legislature has not included specific standards within a delegation, then the legislature has delegated the legislative power to make the law. Such delegation is improper without constitutional authorization." *State ex rel. Tomasic v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, 264 Kan. 293, 303–04 (1998).

102.   If and to the extent the Order constitutes legislative action, this standardless delegation by the enabling statutes constitutes an unconstitutional delegation of power.

103.   As a consequence of the enabling statutes, Defendant Marcellino has, among other things, and for all intents and purposes, unilaterally created his own bar and restaurant regulatory regime that radically departs from state, administrative, and local law.

104.   Either the authority constitutes an unlawful delegation of power, or Defendant exceeded his authority.

105.   Either way, as a consequence, Plaintiffs have been and continue to be injured, and are therefore entitled to, among other things, entry of a temporary restraining order,

prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

106.    Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

107.    Unless the enabling statutes are declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

**Request for Relief**

Plaintiffs respectfully request the Court grant the following relief:

108.    Declaratory judgment that the Order violates the Fourteenth Amendment to the United States Constitution, on its face and as applied to Plaintiffs; and the enabling statutes violate the Fourteenth Amendment to the United States Constitution, and violate the unlawful delegation and separation of powers doctrines under the Kansas Constitution, on their face and as applied to Plaintiffs; and/or Defendant Marcellino acted ultra vires, and/or in the alternative, to the extent the Order relies upon KSA § 65-202 ("all known measures" provision), the Order is unenforceable.

109.    For entry of a temporary restraining order, and/or preliminary and/or permanent prospective injunctive relief, enjoining Defendants, Defendants' officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the Order, either because the Order itself violates the Fourteenth Amendment to the United States Constitution, or because the enabling statutes violate the Fourteenth Amendment to the United States Constitution or because the enabling statutes violate the Kansas Constitution, or because the Order is ultra vires, thus allowing Plaintiff and others similarly situated, to be free from the restaurant and bar curfew regime.

110.    Reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable law; and

111.    Such other legal or equitable relief as this Court deems appropriate and just.

**Jury Demand and Designation of Place of Trial**

112.    Plaintiffs request a jury trial on all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure. Plaintiffs request the trial be held in Topeka, Kansas, due to

the proximity of the parties.

<div style="margin-left:40%">
Kansas Justice Institute<br>
By:  Samuel G. MacRoberts, 22781
</div>

Dated: October 9, 2020

<div style="margin-left:40%">
Samuel G. MacRoberts<br>
12980 Metcalf Avenue, Suite 130<br>
Overland Park, Kansas 66213<br>
Sam.MacRoberts@KansasJusticeInstitute.org<br>
(913) 213-5018
</div>

In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Ricky Dean's, Inc., d/b/a The Sandbar;**<br>**Rita "Peach" Madl.** | Civil Action No. |
| Plaintiffs, | Verification |
| v. | |
| **Thomas Marcellino, M.D.,** in his official<br>capacity as the Lawrence-Douglas County,<br>Kansas, Local Health Officer;<br>**John Doe 1-20; Doe Entities 1-20.** | |
| Defendants. | |

## Verification

I, Rita "Peach" Madl, have personal knowledge of myself, my activities and my intentions, including those set out in the Verified Complaint. I verify under penalty of perjury under the laws of the United States of America that the factual statements in the Verified Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Ricky Dean's, Inc., d/b/a The Sandbar.

Dated: 10\9 , 2020.       _Rita Peach Madl_.
                                        Rita "Peach" Madl individually and
                                        On behalf of Ricky Dean's Inc., d/b/a The Sandbar

1