IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICKY DEAN'S, INC., d/b/a THE
SANDBAR; RITA "PEACH" MADL,

       *Plaintiffs,*

vs.

THOMAS MARCELLINO, M.D., *et al.*,

       *Defendants.*

Case No. 5:20-CV-04063-EFM-ADM

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion for Preliminary Injunction (Docs. 14 & 15). Plaintiffs request that the Court preliminarily enjoin Defendants from enforcing a Douglas County emergency public health order requiring restaurants and bars with liquor licenses to cease serving alcohol at 11:00 p.m. and to close no later than 12:00 a.m. each night. For the reasons discussed below, the Court denies the motion.

**I.    Factual and Procedural Background**

Rita "Peach" Madl is the president of Ricky Dean's, Inc., a Kansas for-profit corporation doing business as The Sandbar, in Lawrence, Kansas. Ricky Dean's holds a Kansas Food Establishment License and Drinking Establishment License pursuant to Kansas law. On October 1, 2020, in response to the COVID-19 pandemic, Defendant Thomas Marcellino, M.D., the Lawrence-Douglas County Local Health Officer, issued an emergency public health order

imposing various restrictions on businesses and individuals in Douglas County, including limiting business hours of restaurants and bars with liquor licenses. Specifically, Section 4.c of the Order provides:

> [R]estaurants and bars with liquor licenses are required to cease serving alcohol at 11:00 pm and shall close their premises, including all outside seating areas or patios, to customers no later than 12:00 am/midnight. Restaurants and bars serving alcohol may conduct carry-out, curbside and off-premises delivery of food items after 11:00 pm. There shall be no carry-out, curbside or off-premises delivery of alcoholic beverages after 11:00 pm. Restaurants that do not serve alcohol are not required to close at 12:00 am/midnight.[1]

The Order remains in effect "until rescinded or until modified."[2]

On October 9, 2020, Plaintiffs filed their Verified Complaint (Doc. 1), requesting declaratory and injunctive relief. Plaintiffs request a finding that Dr. Marcellino's order violates Plaintiffs' procedural due process, substantive due process, and equal protection rights under the United States Constitution. Plaintiffs further request a finding that the Kansas statutes enabling Dr. Marcellino's order are void for vagueness under the U.S. Constitution and violate the separation of powers doctrine under the Kansas Constitution. In the alternative, Plaintiffs assert that Dr. Marcellino exceeded his statutory authority in issuing the order. Plaintiffs now request that the Court preliminarily enjoin enforcement of Dr. Marcellino's order on procedural due process grounds until such time as this case is fully adjudicated.

## II.   Legal Standard

To be entitled to a preliminary injunction, the moving party must demonstrate: (1) that there is a substantial likelihood that it will eventually prevail on the merits; (2) that it will suffer

---

[1] Pls.' V. Compl., Ex. 1, Doc. 1-1, p. 2.

[2] *Id.* at p. 7.

-2-

-3-

irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; and (4) that the injunction, if issued, would not be adverse to the public interest.[3] "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."[4] Further, courts are cautioned "against granting injunctions that alter the status quo."[5] Whether to grant or deny a preliminary injunction rests within the discretion of the district court.[6]

### III.     Analysis

The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived "of life, liberty, or property, without due process of law."[7] This "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests."[8] To establish a procedural due process claim, a plaintiff must show that (1) he possessed a constitutionally protected liberty or property interest; (2) he was deprived of that interest; and (3) he was not "afforded an appropriate level of process."[9] If a plaintiff fails to establish the first element of a due process claim, the Court need not consider whether the government employed an

---

[3] *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Wilderness Workshop v. BLM*, 531 F.3d 1220, 1223 (10th Cir. 2008)).

[4] *Id.* at 1281.

[5] *AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (citations omitted).

[6] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[7] U.S. Const. amend. XIV, § 1.

[8] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[9] *Couture v. Bd. of Educ.*, 535 F.3d 1246, 1256 (10th Cir. 2008) (citations omitted).

adequate level of procedural due process.[10] Thus, the threshold issue is whether Plaintiffs have an existing liberty or property interest.

Plaintiffs identify two putative property interests. First, a property interest in their liquor license, and second, in the right to use their property after midnight. "To have a property interest, an individual 'must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' "[11] "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."[12] "Thus, statutes, ordinances, contracts, implied contracts, and rules and understandings developed by state officials create and define constitutionally protected property interests."[13]

In Kansas, a liquor license is "purely a personal privilege" and does not "constitute personal property."[14] Thus, Plaintiffs' claim of a property interest in their liquor license must fail. Instructive here, in *Rocky Mountain Rogues, Inc. v. Alpine*,[15] the Bull Moose Saloon asserted a due process claim arising out of the town's handling of its liquor license. Citing Wyoming

---

[10] *Seifert v. Kan. City Kan. Cmty. Coll.*, 2010 WL 690938, at *8 (D. Kan. 2010).

[11] *Brown v. Univ. of Kan.*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

[12] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

[13] *Klaassen v. Univ. of Kan. Sch. of Med.*, 2015 WL 2400773, at *2 (D. Kan. 2015) (citing *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012)).

[14] K.S.A. 41-326(a); *see also Murphy v. Curtis,* 184 Kan. 291, 336 P.2d 411, 414 (1959) (analyzing prior version of K.S.A. 41-326 with the same operative language and holding that a liquor license "is a personal privilege and not a property right").

[15] 375 F. App'x. 887 (10th Cir. 2010).

precedent holding that "a liquor license is a mere privilege,"[16] the Tenth Circuit concluded that "under Wyoming law, the Bull Moose had no protected property interest in the continuation of its liquor license."[17] Similarly, other courts have looked to state law in determining whether a plaintiff possessed a protected liberty or property interest in its liquor license.[18]

Although Plaintiffs argue that the Legislature's requirement that no license "be suspended, involuntarily cancelled or revoked unless there is an opportunity for a hearing before the director" evidences that the Legislature "clearly acknowledges that due process rights exist for license holders,"[19] the Court cannot conclude that the Legislature intended broader protections for licensees than those enumerated in the statutory scheme. Thus, Plaintiffs' claim of a constitutionally protected property interest in their liquor license must fail.

Plaintiffs next claim that they have a protectable property interest in using their indoor and outdoor property between midnight and 2 a.m., arguing that Kansas law otherwise allows the use of the property for alcohol sales during that timeframe.[20] Plaintiffs fail, however, to develop their

---

[16] *Id.* at 895 (quoting *Albertson's, Inc. v. Sheridan*, 33 P.3d 161, 186 (Wyo. 2001)).

[17] *Id.*

[18] *See, e.g.*, *Clarke v. Goodson*, 2018 WL 4610652, at *7 (M.D. Ala. 2018), *report and recommendation adopted,* 2018 WL 4609067 (M.D. Ala. 2018), *appeal dismissed*, 2019 WL 5678577 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 936 (2020) (holding that no liberty interest in a liquor license existed where Alabama had determined that such licenses were "merely a privilege"); *G & G Fremont, Ltd. Liab. Co. v. Crazy Ely WesternVillage, Ltd. Liab. Co.*, 202 F. Supp. 3d 1175, 1180 (D. Nev. 2016) (holding that Nevada law does not recognize a "constitutionally protected property interest" in liquor licenses); *Double Six Saloon, Inc. v. City of Pac.*, 2010 WL 4279069, at *2 (E.D. Mo. 2010), *reconsideration granted on other grounds*, 2011 WL 1936039 (E.D. Mo. 2011) (holding that because "Missouri courts have held that, 'no protectable property interest exists in the renewal of a municipal liquor license' . . . . plaintiffs' liquor license cannot form the basis for any allegation of a protected property interest") (citations omitted).

[19] Pls.' Mem. in Supp., Doc. 15, p. 13.

[20] *Id.* at p. 13–14.

argument any further or provide any legal authority supporting their claim. Thus, the Court cannot conclude that Plaintiffs' right to relief on this basis is "clear and unequivocal."[21]

Finally, Plaintiffs argue that Dr. Marcellino's order deprives them of their liberty interest in earning a living. Although the Supreme Court has recognized a liberty interest in the right of individuals to work, it has not addressed the extent to which such a right protects business operations.[22] Further, the Tenth Circuit has opined that "it seems self-evident that [businessowners] have a significant interest in the health and success" of their businesses, but has not explicitly held that the interest is constitutionally protected,[23] and other courts have split on the issue.[24] In the absence of a "clear and unequivocal" right to relief, the Court cannot grant the "extraordinary remedy" of a preliminary injunction. Because Plaintiffs have not met their burden as to the existence of a protected liberty interest, the Court need not analyze whether Plaintiffs were afforded an appropriate level of procedural due process.

---

[21] *Dine Citizens*, 839 F.3d at 1281.

[22] *See Railway Emps.' Dep't v. Hanson*, 351 U.S. 225, 234 (1956) ("It is said that the right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clauses . . . may not be denied by the Congress.") (citations omitted); *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) ("[T]his Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment . . . .") (citations omitted).

[23] *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007).

[24] *See Doss v. Morris*, 642 F. App'x 443, 447 (5th Cir. 2016) (holding that although the Fifth Circuit has recognized a liberty interest in operating a legitimate business, the district court did not err in granting summary judgment where plaintiffs failed to establish that their "ability to operate their business was significantly altered or impaired" by government action); *Cty. of Butler v. Wolf,* 677, 2020 WL 5510690, at *25 (W.D. Pa. 2020) ("There is no question, then, that the Fourteenth Amendment recognizes a liberty interest in citizens—the Business Plaintiffs here—to pursue their chosen occupation. The dispositive question is not whether such a right exists, but rather, the level of infringement upon the right that may be tolerated."); *Xponential Fitness v. Arizona*, 2020 WL 3971908, at *5 n. 4 (D. Ariz. 2020) ("[T]he Court is unpersuaded that the right to operate a business is a protected liberty interest. The cases relied on by Plaintiffs, concern an individual's right to work, not a franchisor's right to have its franchisee operate its business."); *Nahas v. City of Mt. View*, 2005 WL 1683617, at *4–5 (N.D. Cal. 2005) (holding that the plaintiffs failed to show that the Supreme Court has recognized a liberty interest in "owning and operating a business" and that the defendants' "interference with a single business opportunity to open a nightclub . . . is not a complete prohibition of the right to engage in a calling").

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 14) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 19th day of November, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE